1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

LUTHER N. CARLSON,

CASE NO. C15-0109JLR

11

Plaintiff,

12

v.

13

WELLS FARGO BANK, N.A., et al.,

14

Defendants.

ORDER GRANTING
DEFENDANTS WELLS FARGO
AND FREDDIE MAC'S MOTION
TO DISMISS AND DENYING
PLAINTIFF'S MOTION TO
AMEND

15

## I.   INTRODUCTION

16

        Before the court are two motions:  (1) a motion by Defendants Wells Fargo Bank,

17

N.A. ("Wells Fargo") and Federal Home Loan Mortgage Corporation ("Freddie Mac") to

18

dismiss Plaintiff Luther N. Carlson's claims against them (Defs.' Mot. (Dkt. # 7)), and

19

(2) a motion by Mr. Carlson for leave to file a second amended complaint ("SAC") (Pl.'s

20

Mot. (Dkt. # 13)).  The court has considered both motions, the parties' submissions filed

21

in support of and opposition thereto, the balance of the record, and the applicable law.

22

Being fully advised, the court GRANTS Defendants' motion and DENIES Mr. Carlson's

1  motion.  Accordingly, the court DISMISSES all of Mr. Carlson's claims against

2  Defendants Wells Fargo and Freddie Mac WITH PREJUDICE.

3  ## II.   BACKGROUND

4  The facts underpinning this action appear to have arisen when Mr. Carlson signed

5  a promissory note on January 29, 2010, for a loan from Wells Fargo in the amount of

6  $369,653.00.[1]  (*See* Request for Judicial Notice ("RFJN") (Dkt # 8) Ex. 1 ("Note").)  The

7  loan was secured by a deed of trust on property located at 31036 NE 116th Street,

8  Carnation, Washington, 98014.  (*See* RFJN Ex. 2 ("Deed of Trust").)  The Deed of Trust

9  listed Luther N. Carlson and Kari L. Carlson as borrowers, Wells Fargo as the lender, and

10  Northwest Trustee Services, LLC ("NWTS") as the trustee.  (*See id.* at 3-4.)  By October

11  2011, the Carlsons had defaulted on the loan, and NWTS issued a notice of trustee's sale

12  to be held on February 3, 2012.  (*See* RFJN Ex. 3 ("2011 Notice").)  Mr. Carlson filed a

13  complaint and temporary restraining order against Wells Fargo and NWTS in King

14  County Superior Court for the State of Washington on February 1, 2012 ("2012 Case").

15  *Carlson v. Wells Fargo Bank N.A.*, No. 12-2-04140-7SEA (King Cnty. Super. Ct. Feb. 1,

16  2012).  (*See* RFJN Ex. 4.)

17

18

19  _____

20  [1] The court notes that it is somewhat difficult to determine what, precisely, Mr. Carlson alleges, as his complaint appears to have been lifted virtually word-for-word from the complaint in an entirely unrelated action filed in the Central District of California in 2013. *See Jensen v.*

21  *Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183 (C.D. Cal. 2013).  Nevertheless, the court construes Mr. Carlson's *pro se* complaint liberally as it is required to do.  *See Erickson v.*

22  *Pardus*, 551 U.S. 89, 94 (2007).

In the 2012 Case, Mr. Carlson asked the state court to halt the trustee's sale. (RFJN Ex. 4.)  He made a series of allegations including the following:  (1) NWTS failed to fulfill its obligations of good faith (*see* RFJN Ex. 4, at 4-5); (2) Wells Fargo was not the proper beneficiary of the trust because it did not hold the promissory note (*id.* at 4-7); (3) both Wells Fargo and NWTS committed "intentional and express violations of RCW 61.24.040, which will result[] in the Property being wrongfully foreclosed on [sic] based on an improper foreclosure procedure which has been initiated" (*id.* at 8); and (4) both NWTS and Wells Fargo committed "multiple violations of 15 U.S.C. [§] 6101; Consumer Protection Act; Truth in Lending Act; Fraud; and Fiduciary Duty" (*id.*).  The state court dismissed all of the Carlsons' claims against NWTS with prejudice on July 6, 2012, under Washington Rule of Civil Procedure 12(b)(6).  (*See* RFJN Ex. 5.)  On October 12, 2012, the state court likewise dismissed all claims against Wells Fargo with prejudice.  (*See* RFJN Ex. 6.)

After the dismissal of the 2012 Case, NWTS issued a second Notice of Trustee's Sale ("2013 Notice") which was recorded by the county auditor on October 8, 2013.  (*See* RFJN Ex. 7.)  The Notice stated that the Carlsons were $92,136.79 in arrears on the loan, and announced that NWTS would sell the property at 10:00 a.m. on February 14, 2014. (*See id.* at 3.)  The first page of the Notice urged the Carlsons (in boldface, all-capital letters) to "contact a housing counselor or an attorney licensed in Washington now" to get help, and provided information about how to seek assistance.  (*Id.* at 2-3.)  The notice also contained the following statement:

ORDER- 3

> Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

(*Id.* at 5.)

Mr. Carlson did not bring an action to halt the February 14, 2014, sale of the property, and Wells Fargo purchased the property at the sale with a high bid of $343,547.00.  (RFJN Ex. 8, at 3.)  At Wells Fargo's instruction, NWTS then issued a trustee's deed to Freddie Mac on February 14, 2014.  (*Id.*)

The Carlsons refused to vacate the property after the trustee's sale, and on April 22, 2014, Freddie Mac filed a complaint for unlawful detainer in King County Superior Court.  *Fed. Home Loan Mortg. Corp. v. Carlson*, No. 14-2-11372-2KNT (King Cnty. Super. Ct. Apr. 22, 2014) ("Eviction Case").  (*See* Second Request for Judicial Notice ("2d RFJN") (Dkt. # 16) Ex. 3.)  On June 4, 2014, the King County Superior Court issued a writ of restitution in the Eviction Case and ordered the sheriff to put Freddie Mac in possession of the property.  (*See* 2d RFJN Ex. 5 at 3-4.)  Mr. and Ms. Carlson appealed the decision.  (*See* 2d RFJN Ex. 6.)

While the Eviction Case was still pending, Mr. and Ms. Carlson filed this action in King County Superior Court against Freddie Mac on May 30, 2014.  (*See* Verification of State Court Records (Dkt. # 6) Ex. 1 at 6-52.)  The Original Complaint listed both Luther N. Carlson and Kari L. Carlson as plaintiffs, and included only Freddie Mac and "Does 1-50" as defendants.  (*Id.* at 6.)  Mr. Carlson then filed a First Amended Complaint ("FAC") on June 16, 2014, dropping Kari L. Carlson as plaintiff and adding Wells Fargo,

"The Mortgage Fighter," Darren Brown, and Pete Wagner, as co-defendants with Freddie Mac.  (*See* Notice of Removal (Dkt. # 1) Ex. A at 2.)

The FAC alleges ten causes of action:  (1) declaratory relief, which is pled twice (FAC at ¶¶ 17-22, 120-25); (2) fraud, which is pled twice (*id.* at ¶¶ 23-147, 126-50); (3) "Tortious Violation of Statute" (*id.* at ¶¶ 151-58); (4) "reformation" (*id.* at ¶¶ 159-70); (5) "quiet title and set aside foreclosure" (*id.* at ¶¶ 171-75); (6) "Violation of Business and Professions Code Section 17200" (*id.* at ¶¶ 1576-81); (7) "Violation of Washington Civil Code 2923.6" (*id.* at ¶¶ 182-94); (8) "Violation Of § 1788.17 Of The RFDCPA" (*id.* at ¶¶ 195-200); (9) "Violation of Civil Code TITLE 61" (*id.* at ¶¶ 201-12); and (10) injunctive relief (*id.* at ¶¶ 213-17).[2]

Freddie Mac removed the action to this court based under 28 U.S.C. § 1442 and 12 U.S.C. § 1452(f).  Freddie Mac and Wells Fargo have moved to dismiss Mr. Carlson's complaint, arguing that all of his claims against them are barred by *res judicata* (claim preclusion), and that some are also barred by waiver, expired statutes of limitation, failure to state a claim, and the *Merrill* doctrine.[3]  (*See generally* Defs.' Mot. (Dkt. # 7).)  Mr. Carlson has filed a response in opposition to Wells Fargo and Freddie Mac's motion

_____

[2] The Court notes that the bulk of Mr. Carlson's first amended complaint appears to have been copied directly from the complaint filed in an unrelated case out of the Eastern District of California.  *See Jenson v. Quality Loan Service Corp.*, 702 F. Supp. 2d 1183 (E.D. Cal. 2010).

[3] Under the *Merrill* doctrine, which derives its name from the United States Supreme Court case *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947), a government agency—like Freddie Mac—is not bound by, or liable for, the unauthorized or illegal conduct of its agents.  *See Johnson v. Federal Home Loan Mortg. Corp.*, No. C12-1712TSZ, 2013 WL 308957, at *5-7 (W.D. Wash. Jan. 25, 2013) (holding that Freddie Mac was not liable for alleged breaches of contract and fiduciary duty by mortgage servicers).

1 (Pl.'s Resp. (Dkt. # 12)), and has also requested leave to file a Second Amended

2 Complaint  (Pl.'s Mot. (Dkt. # 13)).  The court will address both motions together.

### III.    ANALYSIS

#### A. Standards

5    Wells Fargo and Freddie Mac ask this court to dismiss Mr. Carlson's complaint

6 under Federal Rule of Civil Procedure 12(b)(6) because *res judicata* precludes all of his

7 claims against them.[4]  "To survive a motion to dismiss, a complaint must contain

8 sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

9 face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

10 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003

11 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content

12 that allows the court to draw the reasonable inference that the defendant is liable for the

13 misconduct alleged."  *Iqbal*, 556 U.S. at 663.

14    Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal

15 theory or the absence of sufficient facts alleged under a cognizable legal theory.

16 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Further, dismissal

17 is proper when an insuperable legal obstacle bars plaintiff's claims.  *See Jones v. Block*,

18 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the

19

20 _____

21    [4] Wells Fargo and Freddie Mac also argue that expired statutes of limitation,
Washington's waiver doctrine, and the *Merrill* doctrine bar Mr. Carlson's claims.  Because the
22 court concludes that *res judicata* precludes all claims against these two defendants, the court
declines to address the alternative arguments.

1    applicable statute of limitations, the complaint is subject to dismissal for failure to state a

2    claim."); *Morales v. City of L.A.*, 214 F.3d 1151, 1153 (9th Cir. 2000).

3        The Ninth Circuit has summarized the governing standard as follows: "In sum, for

4    a complaint to survive a motion to dismiss, the non-conclusory factual content, and

5    reasonable inferences from that content, must be plausibly suggestive of a claim entitling

6    the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)

7    (internal quotation marks omitted).  The court concludes that the doctrine of *res judicata*

8    bars Mr. Carlson's claims against Wells Fargo and Freddie Mac, and accordingly grants

9    defendants' motion to dismiss.  (Defs.' Mot.)

10       **B.  Request for Judicial Notice**

11       Defendants Wells Fargo and Freddie Mac ask the court to take judicial notice

12   several documents that are pertinent to the decision in this case, such as the Note, the

13   Deeds of Trust, the Notices, and the state-court filings and orders in the 2012 Case and

14   the 2014 Eviction Case.  (*See generally* RFJN; 2d RFJN.)  "Generally, on a 12(b)(6)

15   motion, the District Court should consider only the pleadings." *Shaver v. Operating*

16   *Engineers Local 428 Pension Trust Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003).  The

17   court, however, "may also consider documents whose contents are alleged in a complaint

18   and whose authenticity no party questions, but which are not physically attached to the

19   [plaintiff's] pleading." *Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d

20   1036, 1043 (9th Cir. 2015) (alteration in original) (quoting *Knievel v. ESPN*, 393 F.3d

21   1068, 1076 (9th Cir. 2005)).  Courts sometimes refer to this as the doctrine of

22   "incorporation by reference." *Id.*

ORDER- 7

1    Additionally, when considering a motion to dismiss, a court may take judicial

2  notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282

3  (9th Cir. 1986).  Federal Rule of Evidence 201 permits the court to "judicially notice a

4  fact that is not subject to reasonable dispute because it:  (1) is generally known within the

5  court's territorial jurisdiction; or (2) can be accurately and readily determined from

6  sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

7  Consistent with that rule, the court may take judicial notice of undisputed matters of

8  public record, such as documents on file in federal or state courts.  *See Harris v. Cnty. of*

9  *Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (taking judicial notice of state court

10 proceedings in *res judicata* analysis); *Lee v. Thornburg Mortg. Home Loans Inc.*, No. 14-

11 cv-00602 NC, 2014 WL 4953966 (N.D. Cal. Sept. 29, 2014) (taking judicial notice of

12 court filings and public records in evaluating whether *res judicata* barred *pro se*

13 plaintiff's third attempt to litigate home foreclosure).

14    No party has challenged the authenticity of the Note, Deeds of Trust, and Notices,

15 court filings, and other documents submitted by Defendants Wells Fargo and Freddie

16 Mac in their two requests for judicial notice.  Each of these documents has either been

17 referred to in the complaint, or is a matter of public record.  *See Northstar*, 779 F.3d at

18 1043; Fed. R. Evid. 201.  Having so found, the court takes judicial notice of the

19 documents.

20 **C. *Res Judicata***

21    Wells Fargo and Freddie Mac assert that the doctrine of *res judicata* bars all of

22 Mr. Carlson's claims because those claims either were, or could have been, brought in the

1    2012 Case in King County Superior Court.  (*See* Defs.' Mot. at 7-10.)  Federal Courts

2    "determine the preclusive effect of a state court judgment by applying that state's

3    preclusion principles."  *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d

4    754, 760 (9th Cir. 2014) (citing 28 U.S.C. § 1738); *see also Migra v. Warren City Sch.*

5    *Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must

6    give to a state-court judgment the same preclusive effect as would be given that judgment

7    under the law of the State in which the judgment was rendered."); *Ounyoung v. Fed.*

8    *Home Loan Mortgage Corp.*, No. Civ. 12-00322 LEK, 2012 WL 5880673, at *4 (D.

9    Haw. Nov. 21, 2012) (applying Hawaii law to evaluate preclusion of claims against

10   Freddie Mac in the context of nonjudicial foreclosure).  Because a Washington court

11   decided the 2012 Case, Washington's *res judicata* law governs.

12        Under Washington law, the threshold requirement for invoking the *res judicata*

13   doctrine is a final judgment on the merits.  *Karlberg v. Otten*, 280 P.3d 1123, 1130

14   (Wash. Ct. App. 2012).  In addition, the Supreme Court of Washington has explained that

15        res judicata occurs when a prior judgment has a concurrence of identity in
     four respects with a subsequent action.  There must be identity of (1)
16        subject matter; (2) cause of action; (3) persons and parties; and (4) the
     quality of the persons for or against whom the claim is made.

17   *Schroeder v. Excelsior Mgmt. Grp., LLC*, 297 P.3d 677, 684 (Wash. 2013) (quoting

18   *Mellor v. Chamberlin*, 673 P.2d 610 (Wash. 1983)) (quotation marks omitted).

19   Washington law, moreover, prohibits claim splitting, which occurs when a party files

20   separate lawsuits with different claims, but based on the same events.  *Ensley v. Pitcher*,

21   222 P.3d 99, 102 (Wash. Ct. App. 2009).  In essence, under Washington law, "[r]es

22

ORDER- 9

judicata—or claim preclusion—applies where a final judgment previously entered and a present action are so similar that the current claim should have been litigated in the former action." *Storti v. Univ. of Washington*, 330 P.3d 159, 165 (Wash. 2014). "Res judicata is the rule, not the exception." *Hisle v. Todd Pac. Shipyards Corp.*, 93 P.3d 108, 114 (Wash. 2004).

Applying this standard, the court determines that *res judicata* precludes Mr. Carlson's claims against Wells Fargo and Freddie Mac. In reaching this conclusion, the court considers the current action and the 2012 Case. The court may consider the 2012 Case in the context of a motion to dismiss because that suit is a matter of public record. *See* Fed. R. Evid. 201(b); *Harris*, 682 F.3d at 1131-32. The court also notes that the 2012 Case was dismissed with prejudice. (RFJN Ex. 6.) A dismissal with prejudice constitutes a final judgment on the merits. *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005); *Krikava v. Webber*, 716 P.2d 916, 918 (Wash. Ct. App. 1986). The threshold requirement for application of *res judicata* under Washington law is, therefore, satisfied here. *See Karlberg*, 280 P.3d at 1130.

There is no real doubt that both cases involve the same subject matter, persons and parties, and quality of person or parties. First, the parties in both suits are either the same or they are in privity. Wells Fargo was a defendant in the 2012 Case (*see* RFJN Ex. 4), and Freddie Mac acquired the trustee's deed from Wells Fargo after the trustee's sale carried out by NWTS, which was a defendant in the 2012 Case (*see* RFJN Ex. 8). *Pederson v. Potter*, 11 P.3d 833, 838 (Wash. Ct. App. 2000); *Rains v. State*, 674 P.2d 165, 169 (Wash. Ct. App. 1983). The quality of the persons and parties is, consequently,

the same because each party has "acted in its own capacity against [the other] and sought

to advance and protect its own interests in both lawsuits." *Berschauer Phillips Const.*

*Co. v. Mut. of Enumclaw Ins. Co.*, 308 P.3d 681, 685 (Wash. Ct. App. 2013).

Additionally, both actions involve the same subject matter, namely the same real

property, promissory note, original deed of trust, payments from Mr. Carlson to Wells

Fargo, and nonjudicial foreclosure. *See Pederson*, 11 P.3d at 838.

      This case also arises from the same cause of action as the 2012 Case.  In analyzing

the same-cause-of-action element for purpose of applying the doctrine of *res judicata*,

Washington courts look to the following four factors:

> (1) [W]hether rights or interests established in the prior judgment would be
> destroyed or impaired by prosecution of the second action; (2) whether
> substantially the same evidence is presented in the two actions; (3) whether
> the two suits involve infringement of the same right; and (4) whether the
> two suits arise out of the same transactional nucleus of facts.

*Rains v. State*, 674 P.2d 165, 168 (Wash. 1983) (en banc) (alteration in original) (quoting

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).  "These

four factors are analytical tools; it is not necessary that all four factors be present to bar

the claim." *Ensley v. Pitcher*, 222 P.3d 99, 105 (Wash. Ct. App. 2009).  The fourth factor

is the most important.  *Deja Vu-Everett-Federal Way, Inc. v. City Of Federal Way*, 979

P.2d 464, 468 (Wash. Ct. App. 1999) (citing *Constantini*, 681 F.2d at 1202; *cf.* Kathleen

M. McGinnis, *Revisiting Claim and Issue Preclusion in Washington*, 90 Wash. L. Rev.

75, 109-11 (suggesting that "[t]he transactional nucleus test could easily be the sole test

for identity of claims because it is broad and flexible enough to include the essence of the

inquiries advanced by the other tests").

1    In the 2012 Case, Mr. Carlson challenged NWTS's right to proceed with the

2    nonjudicial foreclosure of the Carnation, Washington property.  He alleged failure to

3    fulfill obligations of good faith (*see* RFJN Ex. 4, at 4-5), technical deficiencies with the

4    nonjudicial foreclosure process (*id.* at 4-7), violations of the Washington Deed of Trust

5    Act, RCW 61.24.040 (*id.* at 8), as well as "multiple violations of 15 U.S.C. [§] 6101;

6    Consumer Protection Act; Truth in Lending Act; Fraud; and Fiduciary Duty" (*id.*).

7    In this action he alleges claims for declaratory relief (FAC at ¶¶ 17-22, 120-25),

8    fraud (*id.* at ¶¶ 23-147, 126-50), "Tortious Violation of Statute" (*id.* at ¶¶ 151-58),

9    "reformation" (*id.* at ¶¶ 159-70), "quiet title and set aside foreclosure" (*id.* at ¶¶ 171-75),

10   "Violation of Business and Professions Code Section 17200" (*id.* at ¶¶ 1576-81),

11   "Violation of Washington Civil Code 2923.6" (*id.* at ¶¶ 182-94), "Violation Of § 1788.17

12   [o]f The RFDCPA" (*id.* at ¶¶ 195-200), "Violation of Civil Code Title 61" (*id.* at ¶¶ 201-

13   12), and injunctive relief (*id.* at ¶¶ 213-17).  All of these claims stem from the loan, deed

14   of trust, and nonjudicial foreclosure on the Carnation, Washington property.

15   Applying the four factors from Washington law, the court concludes that the

16   claims Mr. Carlson now alleges against Wells Fargo and Freddie Mac constitute the same

17   causes of action presented in the 2012 Case.  First, allowing this action to proceed would

18   destroy the rights and interests established in the prior judgment.  After the dismissal of

19   the 2012 Case, Wells Fargo's right to carry out the foreclosure, and proceed with the

20   trustee's sale was vindicated.  Indeed, a trustee's sale did take place in February 2014,

21   and Freddie Mac acquired its trustee's deed following that sale.  Given these events, the

22   rights and interests Wells Fargo and Freddie Mac now possess in relation to the

1    Carnation, Washington property are directly tied to the resolution of the 2012 Case.

2    Litigation of the claims Mr. Carlson alleges here would unquestionably destroy or impair

3    those rights. *Rains v*, 674 P.2d at 168.

4          Turning now to the second factor in Washington's same-cause-of-action analysis,

5    the court concludes that both actions deal with substantially the same evidence, namely

6    the same property, loan, deed of trust, promissory note, and notices. Likewise, under the

7    third factor, both suits allege infringement of the same right. Mr. Carlson's present

8    complaint centers on his belief that Wells Fargo lacked the authority to foreclose on his

9    home. The 2012 Case resolved that question.

10         The fourth, and most important, factor also militates in favor of claim preclusion,

11   as the transactional nucleus of facts is the same in both cases. *Deja Vu-Everett-Federal*

12   *Way, Inc.*, 979 P.2d at 468. Both cases revolve around the identical series of transactions

13   stemming from a loan for $369,653.00, the deed of trust granted to NWTS to secure the

14   loan, Mr. Carlson's failure to repay the loan, and—ultimately—Wells Fargo's right to

15   foreclose to recover the loan. Accordingly, both cases share a common transactional

16   nucleus of facts. *See Walker v. BAC Home Loans Serv., L.P.*, No. C14-1709JLR, 2015

17   WL 999920 (W.D. Wash. March 15, 2015) (finding common transactional nucleus of

18   facts when homeowner sued lender to prevent foreclosure after previous suit was

19   dismissed with prejudice).

20         In summary, all of Mr. Carlson's claims against Wells Fargo and Freddie Mac are

21   precluded by *res judicata*. The 2012 Case ended in dismissal with prejudice, which

22   constitutes a final judgment on the merits for purposes of *res judicata*. Both cases are

identical for purposes of the *res judicata* analysis under Washington law.  The parties and their quality are the same in both suits, and both suits involve the same subject matter.  In addition, the causes of action align on all four of the relevant factors, including the most important factor, a shared transactional nucleus of facts.  The court, therefore, finds that *res judicata* precludes the claims in the present suit against Wells Fargo and Freddie Mac and therefore grants Wells Fargo and Freddie Mac's motion to dismiss.

### D.  Leave to Amend

Mr. Carlson has asked the court for leave to file a second amended complaint. (Pl.'s Mot.)  Ordinarily, under Federal Rule of Civil Procedure 15(a), leave to amend is "freely given when justice so requires."  *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)) (quotation marks omitted).  Courts consider five factors when deciding whether to grant a leave to amend:  "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint."  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (citing *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

The court is not required to consider every factor in each case.  *Davis v. Astrue*, 250 F.R.D. 476, 480 (N.D. Cal. 2008).  Indeed, "[f]utility alone can justify the denial of a motion to amend."  *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004); *see also Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).  Amendment is futile if it is evident that the complaint could not be saved by amendment.  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).  The Ninth Circuit has explained that

1  "[l]eave to amend need not be given if a complaint, as amended, is subject to dismissal."

2  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).  Bad faith,

3  undue delay, and prejudice may be found when the proposed amendment "will not save

4  the complaint or the plaintiff merely is seeking to prolong the litigation by adding new

5  but baseless legal theories."  *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir.

6  1999).

7         The court recognizes that "a *pro se* complaint, however inartfully pleaded, must be

8  held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v.*

9  *Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))

10 (internal quotation marks omitted).  In considering whether to permit *pro se* plaintiffs to

11 amend their complaints, however, "federal courts are far less charitable when one or

12 more amended pleadings already have been filed with no measurable increase in clarity."

13 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1217 (3d

14 ed. 2004); *see also Schmidt v. Herrmann*, 614 F.2d 1221, 1224 (9th Cir. 1980) (affirming

15 dismissal of second amended complaint with prejudice where pleading consisted of

16 "confusing, distracting, ambiguous, and unintelligible" allegations).

17        The court has already noted that Mr. Carlson's First Amended Complaint is

18 difficult to decipher.  Large portions appear more than once verbatim, most of his claims

19 invoke laws that either simply do not exist, or that are inapplicable in this case.[5]  Indeed,

20

21        [5] For example, in both the First Amended Complaint and the proposed Second Amend
22 Complaint Mr. Carlson alleges that Freddie Mac violated "Business and Professions Code
   Section 17200."  (FAC at ¶¶ 176-81, SAC at ¶¶ 136-41.)  There is no such law in Washington.

ORDER- 15

the bulk of the complaint seems to have been copied and pasted—with minimal

alterations—from an entirely unrelated case filed in the Eastern District of California.

*See Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183 (C.D. Cal. 2013).  The

proposed SAC is largely identical to the FAC, save for the deletion of a few paragraphs,

the unexplained addition of parties,[6] and the inexplicable alteration of dates and dollar

figures.[7]  The proposed Second Amended Complaint does nothing to address the fact that

Mr. Carlson's claims against Wells Fargo and Freddie Mac are barred by *res judicata*, in

addition to expired statutes of limitations, and other impairments.  Indeed, Mr. Carlson's

motion requesting leave to amend appears also to have been copied almost verbatim from

yet another entirely unrelated case.[8]  Mr. Carlson has failed to demonstrate that

permitting another amendment to his complaint would cure any of the fatal defects raised

---

The court presumes that Mr. Carlson intends to reference the California Business and Professions Code, which is inapplicable in this case because all of the events at issue took place in the state of Washington.  (*See generally* FAC.)  Even if California law did, somehow, apply, the court would still dismiss Mr. Carlson claims, because neither the First Amended Complaint nor the proposed Second Amended Complaint present any facts to support the conclusory allegations that Freddie Mac or Wells Fargo violated the California unfair competition law.  (*See* FAC at ¶¶ 176-81, SAC at ¶¶ 136-41.)

[6] Mr. Carlson has added "JP Morgan Chase" and "Loan City" as defendants in the proposed SAC, but has not included any specific allegations against them.

[7] For example, paragraph 16 of the First Amended Complaint alleges that Mr. Carlson sent a letter to Wells Fargo "on or about July 5, 2011" pursuant to the RESPA, to which Wells Fargo failed to respond.  Paragraph 15 of the proposed Second Amended Complaint is identical, with the exception that the date on which the letter was allegedly sent is changed to "on or about November 5, 2007"—more than two years before the Carlsons secured the loan from Wells Fargo.  (*See* Note).

[8] *See F.T.C. v. Phoebe Putney Health Sys., Inc.*, No. 11-cv-58 (WLS), 2013 WL8843916 (M.D. Ga. April 9, 2013).

1    by Wells Fargo and Freddie Mac. *See Corinthian Colleges*, 655 F.3d at 995. The court,

2    therefore, concludes that permitting amendment here would be futile.

3         The court also finds evidence of bad faith, prejudice, and undue delay in Mr.

4    Carlson's attempt to amend his complaint. The proposed Second Amended Complaint

5    will provide Mr. Carlson "with no practical benefits." *Wood v. Santa Barbara Chamber*

6    *of Commerce*, 705 F.2d 1515, 1520 (9th Cir. 1983). The timing of the motion to amend,

7    Mr. Carlson's behavior throughout this dispute, and the overall futility of amendment

8    persuade the court that Mr. Carlson "merely is seeking to prolong the litigation by adding

9    new but baseless legal theories." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th

10   Cir. 1999). Accordingly, the court denies Mr. Carlson's motion to amend his complaint.

11                          **IV.    CONCLUSION**

12        For the foregoing reasons, the court GRANTS Defendants' motion to dismiss

13   (Dkt. # 7), DISMISSES all claims against Wells Fargo and Freddie Mac WITH

14   PREJUDICE, and DENIES Mr. Carlson's motion for leave to amend his complaint (Dkt.

15   # 13).

16        Dated this 30th day of April, 2015.

17

18                          _____

19                          JAMES L. ROBART
                            United States District Judge

20

21

22

ORDER- 17